```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF ALABAMA
                        NORTHERN DIVISION


TRACY RAVIZEE,                        :
                                      :
     Plaintiff,                       :
                                      :
vs.                                   :    CIVIL ACTION 14-0412-M
                                      :
CAROLYN W. COLVIN,                    :
Commissioner of Social Security,      :
                                      :
     Defendant.                       :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 14). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 26). Oral argument was heard on June 29, 2015. After considering the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or

substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), that must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-nine years old, had completed a high school special education curriculum (Tr. 44),[1] and had previous work experience as a construction worker II and a chain offbearer (Tr. 69-70). In claiming benefits, Plaintiff alleges disability due to arthritis, obesity, poor vision, and mild mental retardation (Doc. 13).

Ravizee filed protective applications for disability benefits and SSI on November 2, 2010, asserting a disability onset date of November 22, 2008 (Tr. 24, 145-57). Benefits were denied following a hearing by an Administrative Law Judge (ALJ)

---

[1]Ravizee received a certification of completion, but did not earn

who determined that although he could not perform his past relevant work, there were specific medium exertion jobs that Ravizee could perform (Tr. 24-36).  Plaintiff requested review of the hearing decision (Tr. 14-20) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Ravizee alleges that the ALJ erred in (1) rejecting the opinion of the only examining psychologist; and (2) determining that he did not meet the requirements of Listing 12.05C (Doc. 14, pp. 8-9).  Defendant has responded to—and denies—these claims (Doc. 17).  The relevant evidence of record follows.[2]

Records from Linden High School show that Plaintiff completed classwork through the twelfth grade in a special education curriculum (Tr. 218).  He failed the Graduation Exam four times, but was presented with a certificate of attendance.

On February 1, 2011, Dr. Stephen J. Robidoux performed a consultative physical examination of Ravizee who complained of problems with his legs, neck pain, and stiffness and numbness in

---

a degree (Tr. 44, 218; see Doc. 14, p. 2).

[2] The records from Bryan Whitfield Memorial Hospital (Tr. 243-59) and Dr. Ronnie Chu (Tr. 260-63) pre-date Plaintiff's alleged onset date of November 22, 2008.  Furthermore, they are not cited as support for Ravizee's assertions of disability in this action (see Docs. 13-

his left arm; he had lost his glasses (Tr. 229-32). The Doctor noted that Plaintiff was in no acute distress with normal, heel and toe walking, normal tendon gait, and that he was able to squat and rise. Ravizee had full range of motion (hereinafter *ROM*) in his neck, knees, hips, feet, shoulders, elbows, wrists, and fingers; he had normal grip as well as fine and gross manipulation. Robidoux diagnosed mild degenerative arthritis and poor right eye vision; the Doctor went on to find that Ravizee had no limitations in his ability to sit, stand, walk, run, lift, carry, bend, stoop, handle objects, use hand and foot controls, climb, talk, listen, or travel.

On May 23, 2012, Dr. Harold A. Hatcher performed an eye exam and found that Plaintiff's best-corrected vision was 20/200 in the right eye and 20/40 in the left eye, both near and at a distance (Tr. 235-36, 240-42). Ravizee had no useful binocular vision and his depth perception was only fair; he had amblyopia[3] in the right eye and hyperopia.[4] Hatcher noted that Plaintiff should avoid situations requiring excellent binocular vision.

On August 20, 2012, Psychologist John R. Goff examined

---

14). Therefore, they will not be reviewed herein.

[3] *Amblyopia*, sometimes called "lazy eye," describes when the vision in one eye is reduced because it and the brain are not working together properly. https://www.nei.nih.gov/health/amblyopia

[4] *Hyperopia*, or farsightedness, is caused by a refractive error in the eye where distant objects may be more clearly seen than nearby

Ravizee, using evidence that included school records and a work history report; Plaintiff stated that he had never been treated for mental or emotional difficulties (Tr. 264-69).  Goff found Ravizee's discourse to be rapid and circumstantial; he could recite the alphabet and count backwards from twenty.  The Psychologist administered the Victoria Symptom Validity Test and determined that Plaintiff's performance was incompatible with malingering.  Ravizee underwent the Wechsler Adult Intelligence Scale (WAIS-IV), scoring a verbal comprehension of 70, a perceptual reasoning of 79, a working memory of 69, and processing speed of 71; his full scale IQ score was 67, placing him in the mildly retarded range.  The verbal comprehension, perceptual reasoning, and processing speed indices were borderline scores while the working memory index fell within the mildly retarded range; the general ability index was 72, falling toward the lower end of the borderline range.  The WAIS block design subscale score, assessing visual motor problem solving skills, was higher than expected.  The Reitan-Indiana Screening test demonstrated fairly adequate drawings, readable handwriting, and an ability to perform simple mathematical calculations on paper—though not in his head.  The Wide Range

---

objects.  https://www.nei.nih.gov/health/errors/hyperopia

Achievement Test (WRAT-IV) revealed Plaintiff's ability to read and spell at the mid-fifth-grade level and perform math at the end-of-second-grade level; these findings indicated marginal functional literacy, but an inability to perform adequate mathematical transactions daily.  The Psychologist noted some validity issues with Ravizee's Personality Assessment Inventory (hereinafter *PAI*) scores, but indicated that he had "extreme elevations for conversion and for physiological complaints" (Tr. 268).  Goff noted that Plaintiff "was able to understand, follow and carry out simple instructions.  He has difficulty with complexities" (Tr. 268).  The Psychologist thought Ravizee's preoccupation with his physical condition "would interfere with his ability to deal with the stresses and pressures of the workplace" (Tr. 268).  The diagnosis was Somatoform Disorder, NOS, and mild mental retardation.  In connection with that examination, Goff completed a mental medical source opinion form in which he found Plaintiff markedly limited in his ability to understand and carry out detailed or complex instructions and use judgment in detailed or complex work-related decisions (Tr. 270-71).  Ravizee would be extremely limited in his ability to respond to customary work pressures and maintain attention, concentration, or pace for periods of at least two hours; he had

6

an extreme constriction of interests.  Goff found that Plaintiff had suffered these impairments for all of his life and that these findings indicated adaptive functioning deficits, manifested before he turned twenty-two years old, with regard to self-direction, self-care, health, and work.

   At the evidentiary hearing, the ALJ questioned Sydney Gardner, a psychological expert (hereinafter *PE*), who stated that Ravizee had no diagnosis of an emotional impairment and no history of mental health treatment (Tr. 61-66).  The PE stated that Psychologist Goff's somatoform disorder diagnosis was inconsistent with the record evidence because Plaintiff did not seek extensive medical treatment for physical ailments and pain that would demonstrate an obsessive focus with them.  Gardner stated that although Plaintiff had "a history of special education and . . . IQ scores in the borderline range, consistent with his overall adaptive abilities," he had no history of mental retardation and his work history and adaptive abilities belied such a diagnosis (Tr. 62, 63).  The PE stated that Plaintiff's reasoning, judgment, and comprehension and use of grammar and vocabulary were higher than one would expect of a mentally retarded person.  Gardner indicated that the invalidity of the PAI might call into question Ravizee's IQ test scores.

7

On questioning by Plaintiff's Attorney, the PE acknowledged that some mentally retarded people would likely be placed in a special education curriculum but could function independently (Tr. 66-67).

This concludes the Court's summary of the evidence.[5]

Ravizee claims that the ALJ erred in rejecting the opinion of the only examining psychologist (Doc. 14, pp. 4-8) and in determining that he did not meet the requirements of Listing 12.05C (Doc. 14, pp. 8-9). As these claims are interdependent, the Court will discuss them together, beginning with the latter.

Subsection C of Listing 12.05 requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2014). The Court notes that Ravizee bears the burden of proving his impairment meets—or medically equals—a listed impairment. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986). The Listing analysis follows.

Ravizee scored a full-scale IQ score of 67 on the WAIS-IV (Tr. 267). The ALJ noted the IQ score, but made no specific

---

[5] The Court finds no reason to summarize hearing testimony from Plaintiff (Tr. 43-60), the medical expert (Tr. 60-61), or the vocational expert (Tr. 68-75) as no claim regarding them is made.

8

finding of its validity.  Since the ALJ did not determine the IQ score was invalid, the Court finds it valid.[6]

The ALJ found Plaintiff's obesity, vision, and arthritis to be severe impairments (Tr. 26).  The Eleventh Circuit Court of Appeals held that the second prong of 12.05C is met when a finding is made that a claimant had an additional severe impairment, holding that "significant work-related limitation of function" "involves something more than 'minimal' but less than 'severe.'"  *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).

The Court finds that the two prongs of Listing 12.05C have been satisfied.[7]

---

[6]Ravizee correctly notes that social security regulations, in discussing intelligence tests, state that "[i]n cases where more than one IQ is customarily derived from the test administered, *e.g.*, where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00(D)(6)(c) (2014).
  Though the ALJ's determination suggests that he favors (*see* Tr. 29, 32, 33) the General Ability Index score of 72, as opposed to the Full Scale IQ score of 67 (both on the WAIS), the Court will proceed using the lower score as instructed by the regulations.  However, it notes that, in *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (*citing Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986), the Eleventh Circuit Court of Appeals held that "a valid IQ score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the daily activities and behavior."

[7]The Court notes Ravizee's argument that "a claimant whose impairment meets a listing is disabled" (Doc. 14, p. 9).  However, satisfying the two prongs of Listing 12.05C is not sufficient for a disability finding.  Further analysis is required.

However, the introductory notes to Listing 12.05 state that "[m]ental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2014).  The Eleventh Circuit Court of Appeals, in *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001), held "there is a presumption that mental retardation is a condition that remains constant throughout life," further holding "that a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age of twenty-two, when she presented evidence of low IQ test results after the age of twenty-two."  *Hodges*, 276 F.3d at 1266.  However, the presumption is rebuttable.  *Hodges*, 276 F.3d at 1267.

The ALJ's findings regarding Listing 12.05C are as follows:

> I conclude that the claimant is Borderline Intellectual Functioning, as is demonstrated by a preponderance of the evidence from the claimant's employment history, his performance in the Job Corps, his obtaining a driver's license with a written test, and in his activities of daily living which establish that he has throughout his life engaged in normal activities with no

10

> significant deficits in functioning.  As to
> the other listings, considering the "B"
> criteria, I find the claimant has no mental
> health treatment history and no mental
> health diagnoses of significance, so that I
> find that as to activities of daily living
> the claimant has no limitations, as to
> social functioning the claimant has mild
> limitations, as to concentration,
> persistence and pace the claimant has no
> more than mild to moderate difficulties and
> that as to episodes of de-compensation there
> are no limitations in this area.

(Tr. 29).  In reaching these conclusions, the ALJ discounted Ravizee's testimony of limitation as unsupported by the evidence (Tr. 32-33, 35), a finding gone unchallenged in this action.  The ALJ gave great weight to the testimony of the medical expert, Dr. Whatley, and PE Garner, but gave no particular weight to Psychologist Goff's opinions (Tr. 29, 34).

The ALJ's discounting of Goff's conclusions is the nut of this dispute.  If the Psychologist's conclusions are given weight, Ravizee is disabled under the Listing; if discounted, he is not.

Plaintiff challenges the ALJ's credibility determination, arguing that Goff—and not Garner—actually examined him as opposed to merely looking at the record; Goff and Garner reviewed the same evidence, but formed different conclusions.  As support for Goff's mental retardation diagnosis, Ravizee

11

points to his special education placement, his failing the graduation exam four times, and his performing only unskilled work his whole life.  Plaintiff further questions the ALJ's activities of daily living finding and apparent belief that Garner tested Plaintiff in reaching her decision.

The Court first notes that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[8] *see also* 20 C.F.R. § 404.1527 (2014).  It further notes that, under the Social Security regulations, ALJs "may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart."  20 C.F.R. § 404.1527(e)(2)(iii) (2014).  This testimony is to be evaluated the same as the other record evidence.  *Id.*

Plaintiff correctly argues that Goff examined and

---

[8]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

administered tests to Ravizee, though Garner did not.[9]  *See* 20 C.F.R. § 404.1527(c)(1 & 3).  However, Goff only saw Plaintiff once, so his conclusions are not based on treatment history. *See* § 404.1527(c)(2).[10]  The opinions are weighted the same as both are specialists.  *See* § 404.2537(c)(5).

    The ALJ discounted Goff's exam and test results because he failed to consider Plaintiff's employment history and daily living activities (Tr. 27, 29, 31, 34).  The ALJ further found Goff's findings of marked and extreme limitations in the workplace inconsistent with other evidence of record (Tr. 33).

    Goff reported seeing Ravizee's Work History Report, showing he worked as a laborer and heavy equipment operator for a lumber mill for thirteen years (Tr. 187-88).  The ALJ correctly found that Goff improperly characterized this work as non-continuous (Tr. 265; *cf.* Tr. 27, 29, 34).

    Goff also reported Plaintiff's attending a job corps training program, studying building maintenance and carpentry; the Psychologist expressed skepticism as to whether he completed the programs (Tr. 265).  The ALJ correctly noted that Ravizee

---

[9] The Court does not share Ravizee's concern that the ALJ thought Garner herself tested Plaintiff in reaching her decision (Doc. 14, p. 6); though the transcript indicated such a possibility (Tr. 63), the written decision did not (*see* Tr. 27).

[10] Unless otherwise noted, all C.F.R. cites will be to 20 C.F.R.

completed—and even earned certificates from—the programs (Tr. 27; *cf.* Tr. 55), discrediting Goff for discounting Plaintiff's testimony in spite of the Psychologist's having found him to be a credible historian (Tr. 31; *cf.* Tr. 265).

The ALJ also discounted Goff's conclusions for not properly considering Ravizee's activities of daily living (Tr. 29). The ALJ correctly found that Goff did not mention—or, apparently, consider—them (*see* Tr. 264-69).

However, the Court notes that the "activities of daily living [that Plaintiff] had been able to perform for so many years prior to coming to [Goff's] examination" consisted of "performing simple household chores and taking care of his personal hygiene" (Tr. 29, 34). The ALJ specifically found that Ravizee could "make sandwiches, and cook frozen dinners and pizza" and "watch[] T.V. every day" (Tr. 34).

The Court notes that the ALJ accepted Goff's findings that Plaintiff was moderately limited in his ability to understand, remember, and carry out simple instructions and in using judgment in simple one- or two-step decisions (Tr. 33; *cf.* Tr. 270) ("Even Dr. Goff finds that the claimant can generally be functional in performing simple, routine and repetitive tasks. Accordingly, Dr. Goff's medical source opinion is rejected as to

14

any marked or extreme limitations"). The Court finds the ALJ's conclusion that Goff did not consider Ravizee's daily activities inconsistent with these particular findings.

However, the ALJ discounted Goff's findings of marked and extreme limitations as unsupported by any other evidence of record (Tr. 33). As support for this conclusion, he gave great weight to Garner's testimony in which she specifically found no basis for a longitudinal history of mental retardation (Tr. 34; *cf.* Tr. 27-28). As further support for his finding that Ravizee had not demonstrated adaptive deficits, the ALJ cited "claimant's employment history, his performance in the Job Corps, his obtaining a driver's license with a written test, and in his activities of daily living which establish that he has throughout his life engaged in normal activities with no significant deficits in functioning" (Tr. 29).

The Court has previously discussed Plaintiff's work history and his Job Corps training, specifically finding that Goff had made incorrect assumptions about them. Ravizee challenges the ALJ's conclusion about his work history, beyond his finding made regarding Goff, pointing out that his jobs required only unskilled manual labor (Doc. 14, p. 7; *cf.* Tr. 69-70). The Social Security regulations define unskilled work as "work which

15

needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . . [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." § 404.1568(a). Furthermore, "little specific vocational preparation and judgment are needed." *Id.*

The Court does not accept Ravizee's premise that he is mentally retarded because he only performed unskilled work. While an ability to perform jobs requiring a higher skill level might rule out a 12.05C diagnosis, the reverse is not true.

The Court finds substantial support for the ALJ's rejection of Psychologist Goff's conclusions. Having reached that decision, the Court holds that the ALJ's findings rebut the presumption that Plaintiff's IQ score of 67 manifested lifelong adaptive functioning deficits, discussed in the introductory remarks to Listing 12.05 and contemplated in *Hodges*. The Court finds substantial support for the ALJ's conclusion that Ravizee does not meet the requirements of Listing 12.05C.

At Oral Argument, Plaintiff's Attorney began his argument by relating a truth divulged early in his practice by an experienced attorney: "You can find an expert to testify that a milk cow can outrun a racehorse." The Court understands the

argument but rejects it here.  Ravizee's reliance on Goff's conclusions are misplaced as the Psychologist made errors about Plaintiff's work history and Job Corps' training, things that go to the very heart of this decision.  Specifically, the ALJ found that Ravizee had demonstrated an ability to overcome intellectual impairment and live life free of disability.  The Court agrees with that decision.  Though a different conclusion might have been reached had Plaintiff been less industrious, the facts here are what they are.

Plaintiff has raised two different claims in bringing this action.  Both are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 30th day of June, 2015.

                               s/BERT W. MILLING, JR.
                               UNITED STATES MAGISTRATE JUDGE